IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

THOMAS MESSINA,
  PLAINTIFF

v.                                        CASE NO. _____

SCANNED at PCC and E-mailed
9/23/19 (date) by HZ (initials)
___7___ (# of pages)

TERRI KENNEDY, et al. (WARDEN OF PONTIAC C.C.)

DAVID KENNEDY, (HEAD OF ENGINEERING AT PONTIAC C.C.)
  DEFENDANTS

## I Jurisdiction + Venue

1. THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C § 1983 TO REDRESS THE DEPRIVATION, UNDER COLOR OF STATE LAW, OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES. THIS COURT HAS JURISDICTION UNDER 28 U.S.C § 1331 AND 1343(a)(3). PLAINTIFF MESSINA SEEKS DECLATORY RELIEF PURSUANT TO 28 U.S.C § 2201 AND 2202. PLAINTIFF MESSINA'S CLAIMS FOR INJUNCTIVE RELIEF ARE AUTHORIZED BY 28 U.S.C § 2283, 2284 AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

2. THE CENTRAL DISTRICT OF ILLINOIS IS AN APPROPRIATE VENUE UNDER 28 U.S.C § 1391 (b)(2) BECAUSE IT IS WHERE THE EVENTS GIVING RISE TO THIS COMPLAINT OCCURED.

## II PLAINTIFF

3. PLAINTIFF THOMAS MESSINA, IS AND AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF ILLINOIS, IN THE CUSTODY OF ILLINOIS DEPARTMENT OF CORRECTIONS HE IS CURRENTLY CONFINED AT PONTIAC CORRECTIONAL CENTER IN LIVINGSTON, ILLINOIS.

## III DEFENDANTS

4. Defendant Terri Kennedy is the Warden of Pontiac Correctional Center. She is legally responsible for the overall operation of Pontiac Correctional Center and for the welfare of all inmates confined in the prison.

5. Defendant David Kennedy is the Head of Engineering here at Pontiac Correctional Center. He is responsible for maintaining the upkeep of the facility to include all issues associated with maintenance and plumbing.

6. Each Defendant is sued <u>INDIVIDUALLY</u>, and in his and her <u>OFFICIAL CAPACITY</u>. At all times mentioned in this complaint, each defendant acted under color of state law.

## IV FACTS

7. On May 22, 2019 at approximately 5:00 PM I Plaintiff Messina arrived here at Pontiac Correctional Center as a new inmate.

8. After being screened by medical, I was taken to cell #621 in the West Cell House.

9. After a couple of days of being in the cell, I noticed the water had a slight tint to it and when the water was put into a milk carton, I could see black particles floating around in the water.

10. As soon as the gallery officer (C.O. Thomas) made his rounds, I told him that the water in my cell is coming out dirty. C.O. Thomas told me that "All of the cells in this building has that same issue, just dont drink it."

11. Being as though the water in my cell is the only water that is available to me, I had no other choice but to consume it.

12. After two days of consuming the water, I started getting sick. My throat was sore and I had a deep cough, but I didn't realize the water was the cause.

13. THE NEXT DAY I WOKE UP LIGHT HEADED AND NEARLEY PASSED OUT THE MOMENT I STOOD UP OUT OF BED. THAT WAS A ROUGH DAY FOR ME, MY THROAT WAS RAW, I WAS NAUSEATED AND I KEPT COUGHING UP A DARK BLACK SUBSTANCE THAT IS UNEXPLAINABLE.

14. THINKING THAT MY SYMPTOMS WERE GOING TO GO AWAY ON THEIR OWN, I JUST CHOSE TO RELAX AND GET AS MUCH REST AS I COULD.

15. AFTER ABOUT A MONTH AND A HALF, MY SYMPTOMS HAD WENT FROM BAD TO WORST. I STILL HAD A DEEP COUGH, I WAS STILL FEELING NAUSEATED AND I HAD DEVELOPED A SHARP PAIN IN THE CENTER OF MY CHEST.

16. IN DESPERATE NEED FOR A REMEDY, I SOUGHT MEDICAL TREATMENT.

17. ON JULY 21st 2019 I WAS SEEN BY SICK CALL FOR MY SYMPTOMS, WAS MISDIAGNOSED AND GIVEN TUMS TO TREAT MY CONDITION.

18. AFTER TAKING THE MEDICATION AS PERSCRIBED, MY SYMPTOMS DID NOT GO AWAY AND I STARTED TO EXPERIENCE DIARRHEA.

19. I THEN SOUGHT MEDICAL TREATMENT AGAIN AND ON JULY 30th 2019 I WAS SEEN ON SICK CALL A SECOND TIME FOR THESE SAME SYMPTOMS. ON THIS OCCASION THE NURSE REFERED ME TO SEE THE DOCTOR.

20. ON AUGUST 5th 2019 I WAS SEEN BY THE DOCTOR, AT WHICH TIME I EXPLAINED THE SYMPTOMS I WAS EXPERIENCING. THE DOCTOR PRESCRIBED ME A 60 DAY SUPPLY OF OMEAPRAZOLE (WHICH IS GENERIC FOR PRILOSEC (WHICH CURES ACID BUILD UP IN THE CHEST).

21. ONCE AGAIN I TOOK ALL OF THE MEDICATION AS PRESCRIBED AND MY SYMPTOMS DID NOT GO AWAY.

22. IT WASNT UNTIL I HEARD OTHER PRISONERS TALKING ABOUT THE SUPPOSED LEAD IN THE WATER, THEN I REALIZED THAT THE WATER COULD BE THE CAUSE OF MY SYMPTOMS.

23. I IMMEDIATELY STARTED CUTTING BACK ON THE AMOUNT OF WATER I CONSUMED. WITHIN DAYS MY SYMPTOMS STARTED TO LIGHTEN. I STILL HAD A DEEP COUGH AND MILD CHEST PAINS BUT THEY WERE SOMEWHAT TOLERABLE COMPARED TO WHAT THEY WERE BEFORE I CUT BACK ON MY WATER INTAKE.

24. AFTER ABOUT TWO WEEKS OF LIMITING MY WATER INTAKE, I HAD TO CALL IT QUITS. I WAS SO DEHYDRATED, MY BODY LOOKED FRAIL AND I FELT UNBELIEVABLY WEAK, SO I WENT BACK TO DRINKING MORE WATER. I WENT FROM DRINKING ABOUT 20oz's A DAY TO DRINKING ABOUT 80oz's A DAY.

25. AFTER 3 OR 4 DAYS, MY NAUSEA CAME BACK ALONG WITH SHARP PAINS TO MY CHEST.

26. AFTER GETTING TO KNOW MORE PEOPLE AT THIS PRISON, OFFICERS AND PRISONERS BOTH SAY THE SAME THING AND THAT IS THAT THE WATER HAS BEEN CONTAMINATED FOR YEARS AND THAT THE ADMINISTRATION HAS DONE NOTHING ABOUT IT.

27. AS THE HEAD OF ENGINEERING, DAVID KENNEDY SHOULD HAVE VISITED THE WEST CELL HOUSE IMMEDIATELY AFTER BECOMING AWARE THAT THE WATER WAS CONTAMINATED. IT IS HIS JOB TO DIAGNOSE THE PROBLEM AND FIND OUT HOW AND WHERE THE CONTAMINANTS ARE GETTING INTO THE WATER SYSTEM, AND FIX THE PROBLEM. IF HE COULD NOT READILY FIX THE PROBLEM THEN HE SHOULD HAVE CERTIFIED IT IN WRITING TO THE WARDEN, HAD HER ENDORSE IT AND SENT IT TO THE DIRECTOR OF ILLINOIS DEPARTMENT OF CORRECTIONS. YET DAVID KENNEDY CHOSE NOT TO VISIT THE WEST CELL HOUSE TO PROPERLY ASSES THE ISSUE.

28. ITS SAD TO SAY, BUT TODAY I HAVE TO CHOOSE BETWEEN DRINKING THE CONTAMINATED WATER AND PUTTING UP WITH THE SIDE EFFECTS I PREVIOUSLY EXPERIENCED AND THE UNKNOWN HEALTH RISKS ASSOCIATED WITH ITS

CONSUMPTION OR CHOOSING NOT TO DRINK THE WATER AND HAVING MY INTERNAL ORGANS FAIL.

29. TODAY I DRINK THE CONTAMINATED WATER BECAUSE I HAVE NO OTHER CHOICE AND TOLERATE THE CHEST PAINS, THE NAUSEA AND THE DEEP COUGHS EVERY DAY AS IF ITS A PART OF LIFE.

## V EXHAUSTION OF REMEDIES

30. ON JULY 21, 2019 THE PLAINTIFF INITIATED THE GRIEVANCE PROCEDURE COMPLAINING ABOUT THE CONTAMINANTS IN THE DRINKING WATER. GRIEVANCE #079476

31. ON JULY 22, 2019 THE PLAINTIFF RECIEVED A LEVEL I RESPONSE FROM HIS COUNSELOR DENYING HIS GRIEVANCE.

32. ON JULY 22, 2019 THE PLAINTIFF APPEALED THE LEVEL I RESPONSE TO WARDEN TERRI KENNEDY.

33. ON JULY 26, 2019 THE PLAINTIFF RECIEVED A LEVEL II RESPONSE FROM WARDEN KENNEDY DENYING HIS GRIEVANCE.

34. ON JULY 28, 2019 THE PLAINTIFF APPEALED THE LEVEL II RESPONSE TO DIRECTOR.

35. ON SEPTEMBER 05, 2019 THE PLAINTIFF RECIEVED THE LEVEL III RESPONSE FROM THE DIRECTOR DENYING HIS GRIEVANCE.

36. AFTER APPEALING HIS GRIEVANCE AND RECIEVING THE LEVEL III RESPONSE FROM THE DIRECTOR, THE PLAINTIFF HAS FULLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES TO ALL THE CLAIMS PRESENTED HEREIN THIS ACTION.

## VI LEGAL CLAIMS

37. DEFENDANT TERRI KENEDY SHOWED AND CONTINUED TO SHOW DELIBERATE INDIFFERENCE BY HAVING KNOWLEDGE OF THE CONTAMINANTS IN THE

DRINKING WATER AND BY FAILING TO PROVIDE AN ADEQUATE REMEDY, IN ESSENCE FORCING THE PLAINTIFF TO CONSUME CONTAMINATED WATER AS HIS ONLY SOURCE OF DRINKING WATER. THUS EXPOSING HIM TO A SERIOUS RISK OF INJURY, IRREPARABLE HARM AND OTHER UNKNOWN HEALTH RISKS. DEFENDANT TERRI KENNEDY'S ACTIONS VIOLATED PLAINTIFF MESSINA'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CAUSED PLAINTIFF MESSINA PAIN, SUFFERING, PHYSICAL INJURY AND EMOTIONAL DISTRESS.

38. DEFENDANT DAVID KENNEDY (HEAD OF ENGINEERING) SHOWED AND CONTINUE TO SHOW DELIBERATE INDIFFERENCE BY HAVING KNOWLEDGE OF THE CONTAMINANTS IN THE DRINKING WATER AND BY FAILING TO ELIMINATE THE PROBLEM, IN ESSENCE FORCING THE PLAINTIFF TO CONSUME CONTAMINATED WATER AS HIS ONLY SOURCE OF DRINKING WATER, THUS EXPOSING HIM TO A SERIOUS RISK OF INJURY, IRREPARABLE HARM AND OTHER UNKNOWN HEALTH RISKS. DEFENDANT DAVID KENNEDY'S ACTIONS VIOLATED PLAINTIFF MESSINA'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CAUSED PLAINTIFF MESSINA PAIN, SUFFERING, PHYSICAL INJURY AND EMOTIONAL DISTRESS.

## VII PRAYER OF RELIEF

WHEREFORE, PLAINTIFF MESSINA RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT:

39. GRANTING PLAINTIFF MESSINA DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED HIS RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES AND,

40. GRANTING A <u>PERMANENT INJUNCTION</u> ORDERING THE DEFENDANTS TO PROVIDE A CLEAN AND FILTERED SOURCE OF DRINKING WATER TO ALL PRISONERS IN THE WEST CELL HOUSE AT PONTIAC CORRECTIONAL CENTER, AND

41. GRANTING PLAINTIFF MESSINA <u>COMPENSATORY DAMAGES</u> IN THE AMOUNT OF <u>$450,000.00</u> AGAINST EACH DEFENDANT. JOINTLY AND SEVERALLY.

42. GRANTING PLAINTIFF MESSINA <u>PUNITIVE DAMAGES</u> IN THE AMOUNT OF <u>$450,000.00</u> AGAINST EACH DEFENDANT JOINTLY AND SEVERALLY.

43. PLAINTIFF MESSINA ALSO SEEKS A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

44. PLAINTIFF MESSINA ALSO SEEKS RECOVERY OF ALL COSTS ASSOCIATED WITH THIS ACTION, AND

45. ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

DATED: 09/23/2019

RESPECTFULLY SUBMITTED

THOMAS MESSINA #S12633
PONTIAC CORRECTIONAL CENTER          /s/
P.O. BOX 99
PONTIAC IL, 61764

PAGE 7